Price, J.
The petition in this case embraces a document prepared by the defendant, in the form of an ordinance, which it submitted to the council of the city of Toledo for its adoption, which document presented the mode in which the' telephone company might use the streets, alleys, and other public ways of the city in the construction and operation of its telephone system. It also contained a schedule of *66 rates to be charged for the use of telephones in business houses and private residences.
This proposed ordinance was never passed by the council, and the petition alleges in substance that the telephone company availed itself of the provisions of section 3461, Bevised Statutes, and instituted a proceeding in the probate court of Lucas county for the purpose of having that court determine in what mode the telephone lines should be constructed along the streets, alleys and other public ways of the city, and the proceeding in that court is fully set out in the petition here, including as it does the application, the order of the court made thereon, and the written acceptance of the terms and mode prescribed in the order, as filed by the telephone company. We are particularly concerned in that part of the application filed and acted upon in that proceeding which contains a schedule of rates to be charged for the use of telephones in business houses and private residences within the city, being the same schedule contained in the proposed ordinance which the council declined to pass. As the matter of rates for the use of the telephones is the real bone of contention in this case, we need not quote more from the petition, than to restate them as follows: “the rates to be charged by The Toledo Home Telephone Company for the use of its telephones shall not exceed the following schedule, to-wit: Forty-four ($44) dollars per year for each business telephone on an individual wire with metallic circuit wherever located within the city limits, subject to a reduction of one ($1) dollar per quarter if paid quarterly in advance. Twenty-six ($26) dollars per year for each residence telephone on an individual wire with metallic circuit, *67 wherever located within the city limits, subject to a reduction of fifty cents per quarter, if paid quarterly in advance. ’ ’
Certain city offices and public stations were to be furnished telephones free of charge.
These were the rates which the telephone company proposed in its application filed in the probate court, and they were adopted in the order made by that court, prescribing the mode of use of the streets, alleys, and other public ways of the city in the construction and operation of the telephone system. The gravamen of the relator’s complaint is, that regardless of the proceedings in the probate court under which it occupies the streets and other-public ways, and in which proceeding the ábove rates were adopted, the company on or about the first day of September, 1903, gave notice that it would not renew contracts at said rates after their expiration, and that from and after said date would charge new subscribers fifty-two ($52) dollars per year for each business telephone on an individual wire with metallic circuit, subject to same reduction allowed on former rate; and would charge thirty-two ($32) dollars per year for each residence telephone on an individual wire with metallic circuit, subject to same reduction allowed on former schedule; and that existing contracts could be renewed at the increased rate. This was an increase of eight dollars on each business telephone and of six dollars on each residence telephone. As to the same city offices using-phones, no charge would be made. The relator pronounces this increase unlawful, unauthorized, and an abuse of the company’s franchise, privileges and rights, and that such conduct is a usurpation of *68 'corporate power, franchise and privileges not conferred upon it, and asks that the company he ousted from the exercise of such unwarranted change in its rates.
The position of the respondent is, that while it is true that it suggested the former rates in its application to the probate court and that the court embodied them as part of its order, yet the schedule is not binding as to the renewal of expiring contracts, nor as to new subscribers, because that court was without jurisdiction and authority to fix any rates to be charged for the use of its telephones, and this is the paramount question in the case, for if the proceedings in the probate court, as to the rates amounted to a contract, authorized by law and entered into by competent parties, it should stand notwithstanding the hardships and losses which the answer says will fall upon the company if the contract is enforced. On that ground merely, and which is so fully elaborated in the answer of respondent, a court will not release it from a losing bargain, if such it be.
But if the probate court had no jurisdiction or authority to entertain the subject of rates, or make an order in reference thereto, a different question arises, and to that we now address our attention.
It is well to remember that telegraph and telephone companies do not depend for their franchise in the streets, alleys, etc., of cities and villages upon a grant from the municipal authorities. The legislature has directly invested such companies with the right to use the streets and highways for these purposes.
Section 3454, Revised Statutes, provides: “A magnetic telegraph company heretofore or here *69 after created may construct telegraph lines from point to point, along and upon any public road, by the erection of the necessary fixtures, including posts,piers and abutments necessary for the wires; but the same shall not incommode the public use of such road.”
The sections following give additional authority to such companies as to taking possession of property belonging to a person or corporation for the purposes of survey and locating their lines, etc.
Then section 3461, Revised Statutes, provides: “When any lands authorized to be appropriated to the use of a company are subject to the easement of a street, alley, public way, or other public use, within the limits of any city or village, the mode of use shall be such as shall be agreed upon between the municipal authorities of the city or village and the company; and. if they cannot agree, or the municipal authorities unreasonably delay to enter into any agreement, the probate court of the county, in a proceeding instituted for the purpose, shall direct in what mode such telegraph line shall be constructed along such street, alley, or public way, so as not to incommode the public in the use of the same; but nothing in this section shall be so construed as to authorize any municipal corporation to demand or receive any compensation for the use of a street, alley, or public way, beyond what may be necessary to restore the pavement to its former state of usefulness.”
Section 3471 provides: “The provisions of this chapter (chapter 4) shall- apply also to any company organized to construct any line or lines of telephone ; and every such company shall have the same *70 powers and be subject to the same restrictions as are herein prescribed for magnetic telegraph •companies. ’ ’
Taking these sections with others in the same chapter, it seems clear that telephone companies have their grant directly from the state through its general assembly, to occupy the roads, streets, and highways with their lines and fixtures, and that a grant for that purpose from the municipality is not necessary. These statutes were so construed in Zanesville v. Telegraph & Telephone Co., 64 Ohio St., 67. But the mode or manner of so occupying or using the streets, alleys, etc., is of vast importance to the public, and hence the provisions of section 3461, above quoted, regulate the method of its determination when the municipal authorities and the company fail to agree.
Until the decision of Zanesville v. Telegraph & Telephone Co., supra, the constitutional validity of section 3461 was gravely doubted, because it attempts to confer upon one of the courts of the state legislative or administrative authority, and this ■court was not unanimous in holding the section valid. But that decision is now the law upon the subject, and it is our duty to follow it until persuasive reasons appear to demand its overthrow. How■ever, in the case at bar, it is shown that in addition to .the express authority conferred upon the probate ■court by section 3461, supra, to determine the mode in which the streets, etc., may be used and occupied, "that court has undertaken to fix the rates to be -charged for the use of the telephones in business houses and residences within the city. It is true the application of the company filed in that court *71 asked that the rates be fixed as suggested and named in the. application, but that would be slight, if any, authority for the action of the court, if it lacks statutory support.
It is evident that the statute has not undertaken to make rate fixing a part of the powers or duties of the probate court, and to have such power, the statute must expressly confer it. It cannot be implied from the powers expressly conferred, because upon the subject committed to the consideration of the- court, its scope is special and limited. ' That court is not one of general jurisdiction. By section 8 of article 4 of our constitution “The probate court shall have jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of the accounts of executors, administrators and guardians, and such jurisdiction in habeas corpus, the issuing of marriage licenses, and for the sale of land by executors, administrators and guardians, and such other jurisdiction, in any county or counties, as may be provided by law.”
It seems, therefore, that while the constitution-invests the probate court with jurisdiction over certain matters and subjects named, its further jurisdiction and the manner of its exercise in all cases, depend on legislative provisions; and as section 3461, supra, is the only authority for the probate court to entertain and determine the controversy between the municipality and the company, its authority is not broader than that expressly granted by that section.
There is a rule to the effect that courts, although not of general jurisdiction, have such authority as *72 is expressly granted by constitution or statute, and such implied powers as are necessary to the exercise of those expressly granted. . But that rule is of no avail here, because the fixing of rates was in no sense necessary in determining the mode in which the telephone company might occupy and use the streets and other public ways, and hence the fixing the rates was not the exercise of implied authority within the above rule.
It is urged for the relator that the proceeding in the probate court amounted to a contract between the company and the city. This claim is founded upon the application which asked the court, among other things, to fix the rates suggested, and the order of the court made therebn in connection with the order prescribing the mode of using the streets, and if such contract resulted from the proceeding, it is an abuse of the franchise, privileges and rights conferred for the company now to break its contract.
Was there a contract made in that proceeding? Who were the parties and were they competent to make such contract? The city did not enter into any contract. The proceeding reached the probate court because the city and the company could not agree, either as to the rates or mode of use of the streets, for both of these were subjects of provision in the ordinance proposed by the company for passage by the council. We are informed by counsel for relator that the probate court acted in behalf of the city, which was made party to the proceeding; but that proposition seems untenable when we reflect, that the court has neither express or implied authority to enter into any such contract, and a statute which would undertake to confer upon that court the *73 right to enter into such contracts, would be open to serious attack.
We are not deciding in this case, that the city, through its municipal authorities, and the telephone company may or may not make a binding contract for rates to be charged for the use of telephones. They may or may not be competent to make such a contract; but we do not have the question in the record; it is not before us and we express no opinion now upon it.
We are quite confident, however, that the probate court was without jurisdiction in the proceeding to make any order as to rates for the use of telephones, and therefore that part of its order is a nullity. If this conclusion is sound, there is no basis for the charge made in the petition upon which we are asked to award an ouster of the respondent.
However, it is replied by the relator, that if the court had no jurisdiction to fix the rates as part of its order, the telephone company is now estopped from raising that question, because it instituted the proceeding in which it asked the court to do so, and also because the court did fix the rates as asked, and afterwards the company filed its written acceptance of all the terms of the order. Such written acceptance was filed and the company went into the occupancy of the streets in the mode prescribed by the court and adhered to the rates for a year or more afterwards, or until about September 1, 1903, and then increased the rates as before stated.
In considering this branch of the case, it must be observed that the company broke no contract it had with its patrons. It distinctly appears in the petition and elsewhere in the record, that the higher *74 rates would be charged on renewals of expiring contracts and apply to all new subscribers. Again, the new schedule, like the first, gives free use of the telephones to certain officers and public offices of the city. With these facts in view does the doctrine of estoppel apply and have the effect declared?
We have already found that the statute did not confer on the probate court jurisdiction to fix a schedule of rates, and it is equally true that consent of parties is ineffectual, where the court has no jurisdiction over the subject-matter submitted to it. This rule applies to this case. The consent of the telephone company could not give jurisdiction over the subject-matter where none otherwise existed. The city, while a nominal party to the proceeding, was incompetent to aid the jurisdiction, although it was represented and may have been satisfied with the order made. This order could not amount to a contract, because a valid contract requires the cooperation of at least two competent parties. The probate court was not and could not be a competent party to such contract. Its functions are judicial, and not legislative or contractual. The city had theretofore declined to come to an agreement with the company both as to rates and mode of using the streets, and in the proceeding under consideration the city did not appear or act as a contracting party. How could the doctrine of estoppel grow from such a situation and from such an unauthorized part of the proceeding?
Counsel for relator urge that estoppel by adjudication applies, and that the decree of the probate court is an entirety and must all stand or all fall.
*75 On the subject of rates, the adjudication is a mere nullity, as before stated, and it has no efficacy in law as an adjudication. Therefore there has been no adjudication of the rates, and the record of that •court upon that subject constitutes no estoppel. And we cannot concur in the proposition, that the balance of the order directing the mode of using the streets must also fail.
The latter duty was properly invoked, and the jurisdiction lawfully exercised, and hence the valid portion of the order can well stand, because that alone was within the jurisdiction of the court. In this respect the order is not an entirety and the void is separable from the valid.
It is said that the company should be bound by the representations as to rates, which it made in its application, for the reason that they were made to induce the order it obtained from the court as to the mode of using the streets. Whether such representations had the effect imputed, we know not; but the probate court had no discretion to exercise as to directing the mode of using the streets and other public ways. The statute imposes a positive duty, and the court could not annex a condition that the directing of a mode of use of the highways should be dependent upon submission to any certain schedule of rates.
Again: To whom were the representations made if not to the court? They were not addressed to the city or its citizens. The city was a party to the proceeding, but not as a contracting party. It was not contracting with the company through the medium of the probate court, or the then pending proceeding, and it had no legal authority to do so. The repre *76 sentations made in the application as to rates were addressed to the court, and we have seen that the court could not be a party to any contract upon that subject.
Therefore no party has been induced to enter into a contract, and no party to a contract has been misled or induced to change position by the representations or conduct of the company. We are unable to sustain the contention of the relator upon the doctrine-of estoppel, for we do not discover the material from which the equitable principle arises.
In conclusion we might say that the people of Toledo maybe sorely disappointed in having to meet the-higher rates for telephone service, and may regard the increase as a breach of faith; but if legislation is lax in not properly safeguarding the interests of the-citizens, then laws should be passed or amended to-meet the situation. The probate court could neither legislate or contract, and this court is without power to do either. No ground for the writ of ouster has-been established.
The demurrer to the answer is overruled and the-petition is dismissed.

Writ of ouster refused and the petition is dismissed.

Davis, C. J., Shauck, Crew, Summers and Spear, JJ., concur.